IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JILL GIBSON BELL, et al.,

    Plaintiffs,

      v.

BILLY DARREN FOSTER, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-405-TWT

## OPINION AND ORDER

This is a trademark infringement action concerning the late Jack Gibson's alias "Jack the Rapper." It is before the Court on the Plaintiffs' Motion for Summary Judgment against the Defendant Billy Darren Foster [Doc. 38]. For the reasons set forth below, the Plaintiffs' Motion is GRANTED in part and DENIED in part.

## I. Background

From the late 1940s until his death on January 30, 2000, Jack Gibson was well known as the radio personality "Jack the Rapper." (Pls.' Statement of Facts ¶ 1.) He founded the National Association of Radio Announcers for Black Radio DJs, was the first National Director of Promotions and Public Relations for Motown Records, and opened the first African American owned and operated radio station in the United

States. (<u>Id.</u> ¶ 3.) From 1977 until his death, Jack Gibson also hosted an annual event for radio and music artists called "Jack the Rapper's Family Affairs Convention." (<u>Id.</u> ¶ 5.)  Many rhythm, blues, hip hop, and rap artists attended every year. (<u>Id.</u>) The "Jack the Rapper" alias is still used today in reference to Jack Gibson. (<u>Id.</u> ¶ 4.)  Gibson's heirs and licensees continue to promote the alias. (<u>Id.</u> ¶ 2.) Since 2007, the Jus' Blues Music Foundation in Memphis, Tennessee has annually awarded the "Jack the Rapper Gibson Radio Pioneer Award." (<u>Id.</u> ¶ 6.)

The Defendant Billy Foster, in concert with the other Defendants, hosted a series of events in different cities. Each was titled "The New Jack the Rapper Convention." The first one was held in Atlanta, Georgia from December 6, 2012 to December 8, 2012. (<u>Id.</u> ¶ 13.) Prior to the Atlanta Convention, Foster contacted the Plaintiff Jill Bell through e-mail and expressed his interest in doing a tribute to Jack Gibson. (<u>Id.</u> ¶ 10.) Once Bell realized that Foster and the other Defendants were planning on using "Jack the Rapper" in the event's title, she communicated her objection to no avail. (<u>Id.</u> ¶ 13.) Foster went on to file a trademark application for the title "The New Jack the Rapper Convention." (<u>Id.</u> ¶ 12.) A second "New Jack the Rapper Convention" was then advertised and held in Houston, Texas from February 14, 2013 to February 16, 2013. (<u>Id.</u> ¶ 14.) Prior to the Houston Convention, on February 6, 2013, the Plaintiffs filed for a temporary restraining order to enjoin it. (<u>Id.</u>

¶ 15.) A hearing was held over the TRO application on February 8, 2013, and the Plaintiffs entered into a Settlement Agreement with Foster. (Id. ¶ 16.) Under this Agreement, Foster was to:

(1) pay to Plaintiffs $1,000.00 within three days;

(2) pay to Plaintiffs $5,000.00 on or before February 16, 2013;

(3) pay for Plaintiff Jill Bell or her representative, up to $1,000.00, to attend the Houston, Texas convention;

(4) provide Plaintiffs with access to their books and records with respect to the Houston, Texas convention;

(5) pay to Plaintiffs ten percent of the gross registration fees and sponsorship revenues from their use of the "Jack the Rapper" mark as a license fee; and

(6) withdraw and cancel, upon execution of a licensing agreement, their federal trademark application for "The New Jack the Rapper Convention," serial number 85787701, filed November 27, 2012.

(Id. ¶ 17; Pls.' Mot. for Summ. J., Ex. C.) Foster made the initial $1,000.00 payment and covered a portion of the travel expenses for Bell's representative to attend the Houston Convention. (Pls.' Statement of Facts ¶¶ 19-21.) Foster did not fulfill the remaining obligations in the Settlement Agreement. (Id. ¶ 22.) A third "New Jack the Rapper Convention" was then held in New York City from April 18, 2013 to April 21, 2013. (Id. ¶ 23.)

It is undisputed that Foster used the "Jack the Rapper" mark when promoting these Conventions. (Id. ¶ 24.) The mark was also used to promote and sell products

and services associated with the Conventions. (Id. ¶ 27.) Aside from the Settlement Agreement which covered the Houston Convention, the Plaintiffs never gave Foster permission to use the "Jack the Rapper" mark. (Id. ¶¶ 28, 30.) Foster did not receive permission from any other source. (Id. ¶ 31.) The Plaintiffs asserted claims for trademark infringement under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), trademark infringement under Georgia law, unfair competition under Georgia law, and infringement of the right of publicity under Georgia law. The Plaintiffs now move for summary judgment against the Defendant Foster. Foster did not file a response.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient  showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).  The Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). However, the Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials."[1] Id.

### III. Discussion

#### A. Trademark Infringement

The Plaintiffs' "claims for trademark infringement under Georgia common law and unfair competition under Georgia common law and O.C.G.A. § 23-2-55 are governed by the same standard as [the Plaintiffs'] trademark infringement claim[] under the Lanham Act." Alaven Consumer Healthcare, Inc. v. DrFloras, LLC, No.

---

[1] Requests for admission were sent to Foster. He did not reply. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FED. R. CIV. P. 36(a)(3).

1:09-cv-705-TWT, 2010 WL 481205, at \*5 (N.D. Ga. Feb. 4, 2010) (citing <u>Jellibeans,</u> <u>Inc. v. Skating Clubs of Georgia, Inc.</u>, 716 F.2d 833, 839 (11th Cir. 1983)). Thus, the Court need only resolve whether the Plaintiffs are entitled to judgment as a matter of law on their section 1125(a) claim.

Section 43(a) of the Lanham Act creates a federal cause of action for the infringement of trademarks, regardless of registration status. 15 U.S.C. § 1125(a).[2] "To establish a prima facie case of trademark infringement under § 43(a), a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." <u>Tana v. Dantanna's</u>, 611 F.3d 767, 773 (11th Cir. 2010) (internal quotation marks omitted).

---

[2] (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a).

Here, the Plaintiffs had a proprietary right in the mark "Jack the Rapper" as used in the market for radio and music conventions. "[A] plaintiff need not have a registered mark." Id. "However, only those marks that are capable of distinguishing the owner's goods from those of others, i.e., that are sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks under the Lanham Act." Id. There are four categories of distinctiveness: "(1) generic--marks that suggest the basic nature of the product or service; (2) descriptive--marks that identify the characteristic or quality of a product or service; (3) suggestive--marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful--marks that bear no relationship to the product or service, and the strongest category of trademarks." Id. at 774. In this context, "Jack the Rapper" is at minimum a suggestive mark. It does not reference the particular service in question: hosting radio and music conventions. By using the word "rapper" it only alludes to the nature of the conventions. It is entitled to trademark protection. See id. ("Suggestive . . . marks are deemed 'inherently distinctive' because 'their intrinsic nature serves to identify a particular source of a product' and are generally entitled to trademark protection.").

"The New Jack the Rapper Convention" was likely to mislead consumers into believing that it was endorsed by those with the right to the mark "Jack the Rapper."

"In evaluating whether there is a likelihood of confusion between two marks, [the Court] applies a multifactor test, evaluating the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and service offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public." Id. at 774-75. "In this circuit, we are required to consider each of the seven factors." Welding Services, Inc. v. Forman, 509 F.3d 1351, 1361 (11th Cir. 2007).

Six out of the seven factors support finding a likelihood of confusion. First, "[t]he strength of a trademark is essentially a consideration of distinctiveness." Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1310 (N.D. Ga. 2008) (internal quotation marks omitted). As noted, the mark is "inherently distinctive" because it is only suggestive of the service. "The . . . more distinctive a trademark . . . the greater the likelihood of confusion and the greater the scope of protection afforded it." Welding Services, 509 F.3d at 1361. The second factor also favors the Plaintiffs. Each Convention was given a title that included the protected mark: "The New *Jack the Rapper* Convention." (Pls.' Statement of Facts ¶¶ 9, 14, 23.) It is true

that this includes additional words aside from "Jack the Rapper." However, whether "an addition is sufficient to prevent confusion in a particular instance depends upon the strength of the main part of the mark and the distinctiveness of the mark and the distinctiveness of the additional feature." Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1166 (11th Cir. 1982) (internal quotation marks omitted). Here, of course, the mark "Jack the Rapper" is not only distinctive, but it was the focal point of the Conventions' titles. Third, the services offered by Foster and the other Defendants were similar to those offered by Jack Gibson himself. They all hosted conventions for radio and music artists. The fourth and fifth factors also favor the Plaintiffs. Foster targeted the same subsection of the music industry that Jack Gibson had targeted for his conventions, and Foster advertised in the same major market (Atlanta, Georgia). (Pls.' Mot. for Summ. J., at 11; Bell Aff. ¶ 7.) The sixth factor favors the Plaintiffs as well. Foster intended to misappropriate "Jack the Rapper's" goodwill. This inference may be drawn from his use of the highly distinctive mark itself. In addition, Foster contacted the Plaintiff Bell to express his interest in putting together a tribute to Jack Gibson. (Pls.' Statement of Facts ¶ 10.) Thus, Foster certainly used the mark "Jack the Rapper" intending to capitalize on the popularity of Jack Gibson's radio personality. The seventh factor, however, does not favor the

Plaintiffs. They have not supplied any evidence of actual confusion. Nevertheless, the remaining factors are sufficient to show that there is a likelihood of confusion.

The Plaintiffs are entitled to damages. They may recover (1) Foster's profits, (2) any damages they sustained, and (3) the costs of this action. 15 U.S.C. § 1117(a). Here, further discovery is necessary to establish the amount that the Plaintiffs may recover. First, the Plaintiffs assert that they are entitled to the "$15,000 profits realized by [Foster] by reason of his unlawful acts," as well as treble damages. (Pls.' Mot. for Summ. J., at 21-22.) The Plaintiffs claim that this amount is derived from the Settlement Agreement that the parties reached regarding "The New Jack the Rapper Convention" held in Houston, Texas. This does not, however, speak to Foster's profits from the Conventions held in Atlanta, Georgia and New York City. The record lacks evidence necessary to calculate Foster's profits for those two Conventions. Second, the Plaintiffs assert that they suffered damages in the amount of $36,000. The evidence in the record does not support this. For example, the Plaintiffs claim that they would have received $25,000 from a "Jack the Rapper" conference that they planned on holding in Atlanta in August 2013. (Pls.' Mot. for Summ. J., at 21-22.) There is no evidence indicating that they would have made $25,000. There is also no argument for why they were prohibited from holding this conference and no evidence indicating that -- due to Foster's infringement -- they would have made less money if

they had held it. The Plaintiffs also allege that they lost $10,000 from the "loss of value in licensing Plaintiffs' trademark to persons other than Defendants for other Jack the Rapper events." (Pls.' Mot. for Summ. J., at 22.) This suffers from the same evidentiary deficiencies. The Plaintiffs further allege that they are entitled to $1,000 pursuant to the Settlement Agreement. This may be true, but these are not damages that they are entitled to under section 1117(a).

The Plaintiffs also request equitable relief. The Court may "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation under subsection (a)." 15 U.S.C. § 1116(a). Here, the Plaintiffs are entitled to injunctive relief but not in the form they suggest. They request that the Court issue an injunction with six vague, overly broad provisions. For example, they request that Foster be enjoined from "using in any manner any of the Plaintiffs' Marks, including the Jack the Rapper Mark, or any other mark which so resembles said trademark as to be likely to cause confusion, deception, or mistake, on or in connection with . . . sale of any goods or services not emanating from Plaintiffs," and that he be enjoined from "otherwise competing unfairly with Plaintiffs in any manner." (Pls.' Mot. for Summ. J., at 19-20.) "Every order granting an injunction . . . must . . . (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d)(1). "A court order should be

phrased in terms of objective actions, not legal conclusions." S.E.C. v. Goble, 682 F.3d 934, 950 (11th Cir. 2012) (internal quotation marks omitted). The specificity requirement is "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Schmidt v. Lessard, 414 U.S. 473, 476 (1974). The Plaintiffs' requested wording is too vague. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 985 (11th Cir. 1983) ("[T]he injunction should clearly let defendant know what he is ordered to do or not to do. . . .[a]n injunction which merely forbids a defendant from performing 'acts of unfair competition,' or from "infringing on plaintiff's trademarks and trade secrets" adds nothing to what the law already requires."). The Plaintiffs also do not specify the other marks that they believe are protected aside from "Jack the Rapper." The Court will limit the injunction to the specified infringing acts. Thus, the injunction should bar Foster from using the "Jack the Rapper" mark, or causing the "Jack the Rapper" mark to be used, in connection with conventions catering to the radio and music industries, as well as associated services and merchandise.[3] Foster should also be required to withdraw the

---

[3] The Plaintiffs also generally request that the Foster turn over, for destruction, certain items bearing the "Jack the Rapper" mark. (Pls.' Mot. for Summ. J., at 20-21.) The Court may grant such relief under 15 U.S.C. § 1118. However, there is no evidence in the record regarding what these items are, or that Foster possesses them. To the extent that the Plaintiffs allege that certain goods and services were sold in

application he filed with the United States Patent and Trademark Office, (Pls.' Mot. for Summ. J., Ex. B),  to register the mark "The New Jack the Rapper Convention."[4]

The Plaintiffs also seek attorneys' fees. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "While Congress has not further defined 'exceptional,' the legislative history of the Act suggests that exceptional cases are those where the infringing party acts in a 'malicious,' 'fraudulent,' 'deliberate,' or 'willful' manner." Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994) (citing H.R. Rep. No. 93-524, 93rd Cong., 1st Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133). Here, attorneys' fees are appropriate. Foster used the protected mark "Jack the Rapper" knowing that it was the distinctive alias of Jack Gibson. That is precisely why he used it. The Plaintiffs are entitled to attorneys' fees in the amount of $11,994.86. (Pls.' Mot. for Summ. J., at 23.) The Plaintiffs also ask for punitive damages. However,

_____

connection with the infringing conventions, the injunction will prohibit further sale of those goods and services by Foster.

[4] Other courts have also issued injunctions requiring an infringer to withdraw a trademark application. See, e.g., A.V. By Versace, Inc. v. Gianni Versace, S.p.A., 96 CIV.9721-PKL-THK, 2004 WL 691243 (S.D.N.Y. Mar. 31, 2004) (The defendant "was obligated under the preliminary injunction to withdraw all such applications and registrations made or granted throughout the world . . .."); Simon Prop. Grp., L.P. v. mySimon, Inc., IP 99-1195-C H/G, 2001 WL 66408 (S.D. Ind. Jan. 24, 2001); A.C. Legg Packing Co., Inc. v. Olde Plantation Spice Co., Inc., 61 F. Supp. 2d 426 (D. Md. 1999).

"[p]unitive damages are not available under the Lanham Act." <u>Rain Bird Corp. v.
Taylor</u>, 665 F. Supp. 2d 1258, 1272 (N.D. Fla. 2009); <u>see</u> <u>also</u> <u>Huddle House, Inc. v.
Two Views, Inc.</u>, 1:12-CV-03239-RWS, 2013 WL 1390611, at *5 (N.D. Ga. Apr. 4,
2013); <u>Babbit Electronics, Inc. v. Dynascan Corp.</u>, 38 F.3d 1161, 1183 (11th Cir.
1994) ("Such an award is discretionary, but it may not be punitive, and must be based
on a showing of actual harm.").

    B. <u>Trademark Dilution Under Section 1125(c)</u>

    A plaintiff is entitled to injunctive relief if (1) the plaintiff owns a distinctive
famous mark, (2) another person began using a mark after the plaintiff's mark became
famous, and (3) the person's mark is likely to cause "dilution by blurring" or "dilution
by tarnishment" of the plaintiff's famous mark. <u>See</u> 15 U.S.C. § 1125(c)(1).[5] A
plaintiff does not need to show actual or likely confusion, competition, or actual
economic injury for this claim. <u>See</u> <u>id.</u>

    Here, "Jack the Rapper" is a famous mark. "[A] mark is famous if it is widely
recognized by the general consuming public of the United States as a designation of

---

    [5] "[T]he owner of a famous mark that is distinctive, inherently or through
acquired distinctiveness, shall be entitled to an injunction against another person who,
at any time after the owner's mark has become famous, commences use of a mark or
trade name in commerce that is likely to cause dilution by blurring . . . of the famous
mark, regardless of the presence or absence of actual or likely confusion, of
competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).

source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The Court may look to factors such as: (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) [w]hether the mark was registered . . .." 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). Although the "Jack the Rapper" mark is not registered, multiple factors suggest that it is famous. Jack Gibson began using this alias in the late 1940s, and it has been promoted throughout the world ever since. (Pls.' Statement of Facts ¶¶ 1-2, 4.) Jack Gibson used this alias in connection with his radio programming as well as the conventions he hosted for those in the radio and music industries. (Id. ¶¶ 3, 5.) This mark is widely recognized. (Id. ¶¶ 4, 6, 10.) Further, there is no dispute that the Conventions hosted by the Defendants were held after the "Jack the Rapper" mark became famous.

To satisfy the third prong, the Plaintiffs argue that the title "The New Jack the Rapper Convention" "dilutes by blurring" the "Jack the Rapper" mark. "'[D]ilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B).  The Court must consider factors similar to those assessed in the

"likelihood of confusion" analysis for the section 1125(a) claim.[6] The Court need not

reiterate the same conclusions. The Plaintiffs have established that Foster's use of

"Jack the Rapper" in naming the Conventions impairs the distinctiveness of the mark.[7]

    C. <u>Right of Publicity</u>

"Violation of the right of publicity is a state tort." <u>Toffoloni v. LFP Publ'g Grp.,</u>

<u>LLC</u>, 572 F.3d 1201, 1205 (11th Cir. 2009). "[T]he appropriation of another's name

and likeness . . . without consent and for the financial gain of the appropriator is a tort

in Georgia, whether the person whose name and likeness is used is a private citizen,

entertainer, or . . . a public figure who is not a public official." <u>Martin Luther King,</u>

<u>Jr., Ctr. for Soc. Change, Inc. v. American Heritage Products, Inc.</u>, 250 Ga. 135, 143

(1982). "[T]he right of publicity survives the death of its owner and is inheritable and

---

[6] "In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) The degree of similarity between the mark or trade name and the famous mark. (ii) The degree of inherent or acquired distinctiveness of the famous mark. (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark. (iv) The degree of recognition of the famous mark. (v) Whether the user of the mark or trade name intended to create an association with the famous mark. (vi) Any actual association between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(2)(B).

[7] In addition to injunctive relief, the Plaintiffs also request damages identical to those requested pursuant to their section 1125(a) claim. The Court addressed these damages in the section 1125(a) analysis.

devisable." <u>Id.</u> at 145. "[T]he measure of damages to a public figure for violation of his or her right of publicity is the value of the appropriation to the user." <u>Id.</u> at 143.

Here, the Plaintiffs have established each element against Foster. He appropriated the alias "Jack the Rapper," which is known to be associated with Jack Gibson. (Pls.' Statement of Facts ¶¶ 9, 13-14, 20, 23-27.) He did not have permission from any party possessing the right to Jack Gibson's publicity. (<u>Id.</u> ¶¶ 29, 30-31.) He used the alias to promote the Conventions for financial gain. (<u>Id.</u> ¶ 32.) Consequently, Foster is liable to the Plaintiffs for the amount he gained through his appropriation of the "Jack the Rapper" alias.

## IV. <u>Conclusion</u>

For these reasons, the Court GRANTS in part and DENIES in part the Plaintiffs' Motion for Summary Judgment against the Defendant Billy Darren Foster [Doc. 38]. The Court ORDERS that the Defendant Billy Darren Foster: (1) discontinue further use and attempts to cause further use of the "Jack the Rapper" mark in connection with conventions catering to the radio and music industries, as well as associated services and merchandise; and (2) withdraw the application filed with the United States Patent and Trademark Office to register the mark "The New Jack the Rapper Convention," U.S. Trademark Application Serial No. 85,787,701 (filed Nov. 27, 2012).

SO ORDERED, this 2 day of December, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge